```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION

Kim R. Fulks,                       :

        Plaintiff,                  :

     v.                             :     Case No. 2:07-cv-0410

Michael J. Astrue,                  :     JUDGE WATSON
Commissioner of Social Security,          MAGISTRATE JUDGE KEMP
                                    :
        Defendant.
```

                      REPORT AND RECOMMENDATION

    Plaintiff, Kim R. Fulks, filed this action seeking review of a final decision of the Commissioner of Social Security denying her application for social security disability benefits.  That application, which was filed on March 11, 2005, alleged that plaintiff became disabled on March 1, 2002, due to intractable pain.

    After initial administrative denials of her claim, plaintiff was afforded the opportunity to appear before an Administrative Law Judge.  However, she declined to do so.  The Administrative Law Judge reviewed the record, including plaintiff's statements concerning her symptoms and the medical evidence, and issued a decision on September 12, 2006, denying benefits.  That decision became the final decision of the Commissioner when the Appeals Council denied review on March 9, 2007.

    Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on June 20, 2007.  Plaintiff filed a statement of errors on August 22, 2007, to which the Commissioner replied on September 7, 2007.  No reply brief has been filed, and the matter is now ripe for decision.

    The Administrative Law Judge summarized the contents of plaintiff's written reports at pages 18-20 of the administrative

record.  Briefly, plaintiff asserted that she had an injured disc in her back which was causing unbearable pain.  She also had pain in her wrists.  She had undergone surgery for that condition and was taking medication for her back pain, but she variously reported either that the medication did not help at all or that it made her drowsy.  In an ordinary day, she would take care of her children, sometimes with assistance from her husband and one of her daughters, and would occasionally cook, shop, or do laundry.  Her back pain made it very difficult for her to walk, to lift, to climb stairs, or to sit for an extended period of time.  In her appeal to the Administrative Law Judge level, plaintiff stated that she could not work a full day either standing or sitting down, could not walk flat on the ground with her right foot, and was wearing a brace on her left foot.  (Tr. 80).

Plaintiff's report of work history showed that she had been employed as a warehouse worker from 1991 to 2002.  Some of the positions she held required her to be on her feet all day and to lift heavy items, while others were performed while seated and involved little, if any, lifting, walking, or standing.  (Tr. 49-56).

Pertinent medical records reveal the following. Plaintiff had surgery on her right wrist on January 8, 2002.  Her prognosis following the surgery was guarded and dependent upon her following appropriate postoperative protocol.  (Tr. 82).  In August, 2002, she underwent laparoscopic surgery to determine the source of pelvic pain.  A small fibroid mass was seen, but the primary condition appeared to be adenomyosis.  (Tr. 86-87).  She was doing well several weeks later.  (Tr. 91).

Plaintiff was seen by Dr. Massa, a podiatrist, on April 2, 2004.  She presented with a chief complaint of right foot pain.  She had previously worn orthotics.  Dr. Massa diagnosed Morton's

neuroma, mild plantar fasciitis, and calcaneovalgus.  His initial treatment plan was to obtain new orthotics, and if they were unsuccessful, injections and even surgery might be indicated. (Tr. 126-27).  She continued to see Dr. Massa and was treated with both orthotics and injections, but was still having foot pain as of July, 2005.  (Tr. 192-200).

Plaintiff had a history of chronic cholecystitis.  She underwent a laparoscopic cholecystectomy on December 22, 2004, and was discharged without complications the following day.  (Tr. 133-34).  Eight days postoperatively, she was doing well, had no further attacks of gall bladder pain, and reported that her back pain had resolved.  (Tr. 139).

Plaintiff was seen at the Back Pain Institute of Columbus on March 11, 2005, complaining of constant and unbearable back pain. She indicated that her present level of pain was the "worst pain imaginable" although she also indicated she could lift moderate weights, walk for half a mile, and sit for an hour at a time.  An x-ray of her lumbar spine was completely normal.  She did not return for further treatment.  (Tr. 171-77).

Plaintiff was evaluated by Dr. Femblatt on June 1, 2005.  At that time, she identified her chief problem a low back pain dating back to 1998.  She also reported bilateral foot pain.  An x-ray of the lumbar spine was normal, but she did exhibit problems with her feet and the tendons in her lower legs.  She was also tender over the left sacroiliac joint. Dr. Femblatt attributed any low back pain to the mechanical abnormalities in her lower legs and feet.  He believed she was limited to no more than one-half day on her feet, and she was also limited in her ability to lift and carry objects.  (Tr. 182-84).

Plaintiff had an MRI done of her lumbar spine on July 13, 2005.  It showed only mild degenerative changes at L5-S1.  (Tr. 202).

Dr. Teague reviewed plaintiff's records and reported on June 16, 2005, that she retained the ability to perform a full range of medium work.  He did not impose any postural limitations, and believed his assessment was consistent with the assessments of the treating sources.  (Tr. 203-10).

Based on the above evidence, the Commissioner concluded that plaintiff suffered from severe impairments including Morton's neuroma of the right foot, calcaneal valgus, mild plantar fasciitis, status post cholecystectomy and right wrist pain.  The Commissioner further found that plaintiff could perform a full range of sedentary work.  The Commissioner discounted her subjective complaints of disabling pain, noting that they were not consistent with the objective medical findings and that she could perform daily activities inconsistent with a finding of total disability.  As a result, she was found not to be disabled.

In her statement of errors, plaintiff raises three issues. Two of them are procedural: she contends that her waiver of the right to be represented by counsel during the administrative proceedings was invalid and that the Commissioner failed fairly to develop the record.  She also contends that the Commissioner erred in evaluating her credibility and in relying on the Medical-Vocational Guidelines.  This latter contention raises the question of whether the Commissioner's decision is supported by substantial evidence.

<u>Standard of Review</u>.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (<u>quoting</u> <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"

Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

As argued, plaintiff's first assignment of error deals not so much with her waiver of the right to counsel but the waiver of her right to appear personally in front of an administrative law judge. Although she signed a waiver form, and acknowledges that the form meets the regulatory requirements for such forms, she contends that her written statements on the form ("If they denied me again then I will go in front of a Judge") show that she did not understand that she was waiving her one and only opportunity, at the administrative level, to appear personally to present evidence and to argue her case. Without citing to any legal authority, she asserts that in light of this statement "the burden [shifted] to the ALJ to correct her misunderstanding." Plaintiff's Statement of Errors (doc. #12), at 4.

The appropriate legal standard to be applied to this claim is a follows: in the typical case, technical compliance with the applicable regulations and rulings is sufficient to validate a

-5-

waiver of the right to appear at the administrative hearing, but "technical compliance with SSR 79-19 will not constitute a valid waiver if the surrounding circumstances suggest another interpretation of the facts." Francisco v. Barnhart, 2003 WL 548870, *2 (S.D.N.Y. February 25, 2003). Thus, a waiver may not be valid if, as in Francisco, the waiver form is not translated for the benefit of a person who does not speak English, or if the claimant is incorrectly advised about such things as the distance he needs to travel in order to attend the hearing. See Stiver v. Shalala, 879 F.Supp. 1021 (D. Neb. 1995).

 Here, plaintiff stated on two different forms that she did not want to appear in front of an Administrative Law Judge. Those forms clearly stated that she had the right to do so. She does not appear to suffer from any difficulty understanding English, and there is nothing in the record indicating that she was under any misunderstanding as to her entitlement to appear, the place of the hearing, or any other factor that would have improperly discouraged her from appearing. Although she may not have understood that she had only one opportunity during the administrative proceedings to appear before a judge of any kind, the social security administration is not required to provide that information to claimants. Rather, the Court of Appeals has specifically held that the contents of Form HA-4608, which is the form that plaintiff signed, adequately explain a claimant's hearing rights and that the execution of such a form is a valid waiver. Hollon ex rel. Hollon v. Comm'r of Social Security, 447 F.3d 477 (6th Cir. 2006). Since the claimant does not have to be advised, in order to waive a hearing before an Administrative Law Judge, that such a hearing is the only opportunity to appear in person, the fact that a claimant may not understand that aspect of the proceedings cannot invalidate an otherwise valid waiver. Thus, plaintiff's first assignment of error is without merit.

 Next, plaintiff asserts that the Administrative Law Judge did not fairly develop the record. She contends that the record

does not contain any listing of the doctors from whom she received treatment and that no records were obtained from her long-time treating physician, Dr. Gutheil.  She also asserts that the record contains a reference to EMG testing done by Dr. Hickman and that the ALJ should have obtained the records from Dr. Chin which plaintiff submitted to the Appeals Council because those records predate the ALJ's decision.

     Clearly, the Commissioner has a duty to develop the record, especially where a claimant is unrepresented.  That duty is triggered if, among other things, there are obvious gaps in the record that create the likelihood that significant evidence exists but has been overlooked. <u>See, e.g., Frank v. Chater</u>, 924 F.Supp. 416 (E.D.N.Y. 1996).  Here, however, it is clear that the Social Security Administration obtained the most pertinent medical records based on information supplied by plaintiff.  There appear to be records from every specialist to whom plaintiff was referred by Dr. Gutheil.  Plaintiff did not identify any other conditions which were allegedly disabling and upon which his records might have shed additional light.  Further, even the additional records submitted to the Appeals Council are not inconsistent with the Commissioner's ultimate finding that plaintiff could work at a sedentary occupation.  Thus, the Court finds no error in the manner in which the Commissioner developed the record.

     Plaintiff's final argument takes issue with the substance of the Commissioner's decision.  Most of her arguments are addressed to the Commissioner's credibility determination.  However, the Commissioner clearly articulated the reasons for concluding that her subjective complaints of debilitating pain were not fully credible, and the Commissioner also credited her testimony to the extent that the opinion of the state agency reviewer was rejected and plaintiff was limited to sedentary work.  As the Commissioner points out, plaintiff's hand problem appeared to have been resolved satisfactorily, at least for a long period of time, and

her lower extremity problems were dealt with by restricting her to a sedentary job. There was no objective evidence of other impairments or limitations which would restrict her work ability even further. Under these circumstances, the Court will not disturb the Commissioner's findings as to plaintiff's credibility, and there is no basis for concluding that the Medical-Vocational Guidelines were inapplicable.

Based on the foregoing, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

<pre>
                              /s/ Terence P. Kemp
                              United States Magistrate Judge
</pre>